Our seventh case this morning is United States v. Veras Good morning Mr. Gansner. Good morning. May it please the court, my name is Anderson Gansner and I represent the appellant in this case, Deily Veras. The facts of a case matter and at a criminal sentencing certain facts are exceptionally important. For instance, in a narcotics case the amount of drugs, in a robbery the amount of money taken, and in a fraud case like this how long the fraud went on. But the judge below got that fact unmistakably wrong. The offense went on for 18 months, he thought it went on for four years. And we know this because he said so when he was emphasizing the seriousness of the offense and declaring that Mr. Veras had no respect for the law, despite Mr. Veras's otherwise spotless record, his confession, and his efforts to assist the government. What about his saying I stand corrected after your client corrected him about the length of time? Well I said was I stand corrected which I think I'd use a clear admission that he had gotten it wrong. If he had wanted, if he had misunderstood it as the government suggests, so he just misspoke. If he had done that, that was the prime opportunity to say so. Say I understood the facts, I simply misspoke. Instead by saying I stand corrected, a correction occurs when you've gotten something wrong and you have to make a change. So he is essentially admitting that he he got the fact wrong. For you to succeed in this argument you have to show that he based the sentence on that misunderstanding and there were other reasons why you know that he identified for the length of the sentence that he gave your client. That's true but they all turned around the severity of the offense. It all turned around you know the amount of money, the number of victims, and again how long it went on. And he repeated this wasn't a one-time occurrence, this happened again and again. And when he mentioned the length of the offense he was talking about a 3553A factor in particular. He was talking about the need to promote respect for the law and whether Mr. Veras had demonstrated respect for the law. And he said listen I that totally destroys any any belief that you might have some respect for the law given how long this went on. And the other cases where courts have made some mistakes and that the government points to, in those cases, they knew or learned or realized that an error had been made before the sentence had been imposed. And that's really one of the key differences here is the judge was in the midst of you know this fiery admonishment of my client. He said four years and the first opportunity we had to talk to him about that was after the sentence had been imposed. The sentence of imprisonment put it out there, the sentence of supervised release, and even the supervised release terms. Effectively the sentencing was pretty much over. All we really talked about after that point was you know recommendation about where he'd be incarcerated. So if you read the transcript the judge it's in the middle of that portion where the judge is emphasizing how severe the offense is. And as the government notes in its own brief that's really what drove the sentence. So this makes this case exactly like what the court talks about in the Miller case where it said a single misinformed comment warrants resentencing if it reveals that the judge misapprehended the record with respect to an aggravating factor that the judge considered important. And in any fraud case how long the offense went on, how many transactions there were, how many trips in this case, how many back-and-forths there were, how much time you had to stop doing what you were doing, that is clearly an aggravating factor and the more it goes on the more important it is. Well you're more concerned with the the length of the sentence you were comparing to others. Is that correct? When with regard to the second issue your honor? Well if that's what you want to call it, the second issue, that's what I'm looking at. I don't remember the exact numbers but there were three numbers and his was sort of in the middle. Yeah so I... And that's sort of where his sentence was I thought. And the deal with that argument your honor is you know if the court didn't agree, if the court rejected it and didn't buy and thought our client you know fell fell in place that's you know that's the court's call to make. We're making the arguments to the district judge it's up to him to decide how persuasive he finds them. But the error there is that both us and the government were both relying on those three other cases. Our argument was that our clients conduct was much was much less severe than those other three people who all ran their own schemes, who all committed these offenses for much longer periods of time, were all in the country illegally and Mr. Veras on the other hand just did sort of a portion of the scheme, kept a much smaller percentage of the money and the scheme went on for a much shorter period of time. So our argument was listen he really pales in comparison to these these other defendants. And the government sort of viewed it a different way. The government said no Mr. Veras kind of falls in line with with our view and you know where where his sentence should be. We also have this issue of the mandatory consecutive. Yes. The 24 months I think was. That's right on the 1028A. Yes your honor. So not much you can do about that. Right that I mean that that part of the sentence was was set in stone. There wasn't anything we could do about it. That's right. Okay. And two of the defendants we were talking about had also been convicted of 1028A charges. So their sentence is probably that the fairest comparison because it was thinking of that charge and in addition to the fraud charges that were attacked on top of them. And our argument was one of those defendants for example got a 15 month sentence on top of his 24 month mandatory minimum. And Mr. Veras of course got a 28 month sentence. And our view was that Mr. Veras was much less culpable. Had a much you know did much less in terms of his offense. And we noted that and argued that to the judge. And since the government was using that same argument and we are also talking about a guideline that you know isn't followed very often. It's followed less than half the time. And the government was relying on those same comparisons. All we're simply arguing here is that the judge should have at least mentioned the issue. Should have said okay you know I don't really buy these comparisons. Or you know I don't find them persuasive. Or I believe you know I think the government has the better the better argument with regard to these issues. But the judge didn't say anything about it at all. Counsel let me ask you a question. I just want to make sure I've got the record right. Yes. So in this four years comment what the district court said was you victimized 500 individuals over four years. Yes. Is the number of individuals correct? Yes it was. So the judge did get other facts right. He got the amount of money right. He got the the number of victims roughly right. But he got the length of the offense wrong. And then he kind of re-emphasized that again. He said this you know this wasn't a one-time occurrence. So clearly to him it was an aggravating factor. 500 individuals isn't a one-time occurrence. Of course. You know 499 more than once. Yes of course. Although the way Mr. Veras would do it is he would get stacks of these false you know fake refund checks. Ship them or bring them to Milwaukee. Have them cashed at this particular check cashing business that was you know obviously sort of a hotbed for this kind of activity. And then bring the money back. And so what we're talking about is just more trips right. More time more maybe in smaller amounts. But more trips and over an extended period of time where my client if it had been four years you know every day he should have known that he should have stopped. Every day he's engaging in more transactions. He's doing more of the same thing. And he's putting himself in deeper and deeper. And I would submit that 18 months is dramatically less than 48 months. It's the equivalent. I was thinking of it. It's the equivalent of robbing three banks versus robbing eight banks. That's a significant difference. And the judge relied on it. It is because it's the same number of people. That's I think you just did a lot more in a short period of time. Yeah I agree it's sort of reducing it's reducing the scale but you know increasing the frequency. Yes. Do you want to save your time? Yes I will unless the court has any more questions. Thank you. Thank you. Ms. Tableson. May it please the court Rebecca Tableson on behalf of the United States. Your Honors, DeLiveris was as the district court found the linchpin of an extensive fraud scheme that caused over 2.7 million dollars in losses. For that crime he received a below-guideline sentence that was in line with sentences imposed on similar defendants. His appeal focuses on two quibbles with the judge's sentencing remarks. First Mr. Veras attempts to characterize a fleeting misstatement as a violation of the due process clause of the Constitution. That attempt should fail as this court's cases recognize what we all know as a matter of common sense. There is a big difference between a judge actually relying on misinformation and a judge briefly misspeaking before accepting correction. But how do we know for sure it was a misstatement? That's a pretty big that's not 21 months versus 18 months I mean four years maybe it was a misstatement maybe it was a misapprehension of the facts. A few ways Your Honor. First the sentencing judge accepted the undisputed correct facts in the pre-sentence report which specifically stated that the offense went on for 18 months. So those are the facts that from the outset of the sentencing hearing define the crime and the sentencing. Second if you read the sentencing transcript from front page to last page what you'll see is that during the remarks of defense counsel and the defendant they use the phrase four years five different times. Understandably because they were talking about Mr. Veras' good conduct over the course of the four years that had elapsed since the government executed a crime at his home. But just as a matter of human nature at least I know I think we all know that sometimes when you hear a number said over and over you when you go to say a number accidentally the one you just heard comes out of your mouth. And that I think is just the fairest reading of the transcript here. And as soon as Mr. Veras' counsel corrected the district court the district court accepted correction. Crucially and contrary to what counsel has before the district court formally imposed Mr. Veras' sentence. What happened if you look at the transcript is this. The district court's initial sentencing remarks go from the appendix pages 29 to 33. His errors at page 31. On page 33 at the end of his remarks the court did what it typically does and it announced its intention to impose a sentence of 28 months. But it did not yet formally impose the sentence. On page 33 then Mr. Veras immediately corrected the court. The court accepted correction. And on page 35 the court pronounced its judgment beginning quote this is the formal sentence of the court. So the distinction that counsel has drawn is simply inaccurate on the facts of this case. As to the second argument Mr. Veras argues that the sentencing court failed to address his comparisons to other defendants. As an initial matter the district court did address Mr. Veras' role calling him the linchpin of this extensive scheme which was the heart of counsel's argument about the comparisons with other defendants. But in any event even if even aside from that a long line of precedent from this court and the Supreme Court squarely forecloses Mr. Veras' argument on this court. As the Supreme Court put it in Gaul the sentencing judge quote necessarily gave significant weight and consideration to the need to avoid unwarranted disparities and quote by correctly applying the guidelines. There is no exception to that rule for white-collar offenders whose guidelines are calculated based on section 2b 1.1 of the sentencing guidelines. And this of defendants who were sentenced based on section 2b 1.1 United States against Oliver 873 F 3rd 601. Counsel did the district judge accept the recommended sentence in the PSR or did he go higher? The the guidelines range was 37 to 46 months. The district court imposed a 28 month sentence. I do not have access to what the probation agent actually recommended that is sealed and neither party can see. Ultimately both claims in this appeal boil down to the same thing. An effort to find any flaw in the sentencing transcript however small and to leverage that flaw into a second bite at the apple. You can see that particularly in the remedy requested here. Not just resentencing but reassignment to a new judge. Mr. Veras does not argue that the alleged errors had a substantive effect on his sentence. His ultimate goal is not really a resentencing free of these alleged errors but a chance to be sentenced by a different judge. Fortunately there is no reason to remand this case at all not to mention reassignment under rule 36. The government respectfully requests that the decision below be affirmed. If there are no further questions I will see the rest of my time to the court. Thank you. Thank you. Just a few brief points. Claiming that a judge who gets the length of your offense wildly wrong to the tune of 266 percent, claiming that that noting that error is a quibble, I think that's a bad call. I think any of us who were in that situation and would have that happen to us would feel that something had gone wrong in the sentencing process. What were the other uses of four years? Four years represented something else at least in the context of this case as I understood. Yeah so we talked about the four-year minutes beforehand. So the suggestion that somehow mentioning that. Well I'm just wondering what was the four-year period? Sure what we were talking about was the length of time from the sentencing going back until when the offense had stopped. And it was a period of time where Mr. Veras had been obeying the law. He had hired a lawyer, he had cooperated with the government, he had gotten a job, he had gotten married, he'd been living sort of a crime-free life. So that was one of the arguments we were making Your Honor. But again it happened about 15 minutes before the judge made his statement and the record speaks for itself. He said what he said and then when I brought up the actual period of time he said I stand corrected. He had gotten it wrong. And with regard to when it happened, on page 33 of the appendix before I can bring up the four-year comment, he says the sentence that this court is going to impose is 28 months followed by the statutory maximum 24 months and then mentions the term of supervised release and talks about the supervised release terms. One final note is that's kind of what the government is arguing it has sort of been rejected in a case called Loopkey where a judge didn't allow for allocution until after he announced the sentence and he said okay I guess I should let you allocute and then afterwards he formally announced the sentence. And what this court said was that's not sufficient. And that case is taken under advisement and our last